IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,  §<br>§<br>Plaintiff,  §<br>§<br>v.  §<br>§<br>CISCO PINTO,  §<br>§<br>Defendant.  § | No. 24-CR-309 DHU |

## MR. PINTO'S OPPOSED MOTION TO CONTINUE RELEASE PENDING SENTENCING

Defendant Cisco Pinto, by and through his attorney, Hadley Brown, pursuant to U.S. Const. Amend. VIII, 18 U.S.C. §§ 3143(a) and 3145(c), and *U.S. v. Mutte*, 383 Fed. Appx. 716, 2010 WL 2413139 (10th Cir. 2010), respectfully moves this Court to allow him to remain on conditions of release pending sentencing in this case. A change of plea hearing is scheduled for May 30, 2025. This pleading is filed in anticipation of that hearing. Mr. Pinto requests that the Court permit him to remain out of custody with current conditions of release which include pretrial services supervision, travel restriction to Bernalillo County, employment, residence at La Pasada Halfway House, and home detention with GPS monitoring.

As grounds for this motion, Mr. Pinto states the following:

1. Mr. Pinto was initially released on this case on March 7, 2024 with strict conditions as described above. On March 13, 2024, an Indictment was filed

charging him with two counts of aggravated sexual abuse. The date provided for each count was on or about September 14, 2023.

2. For the 450 days (one year and nearly three months) that Mr. Pinto has been out of custody with this case pending, he has perfectly complied with conditions of release. In the *Release Status Report to the Court* (Doc. 45), Pretrial Services provides that Mr. Pinto is currently employed by Sam's Club and residing at La Pasada Halfway House. Mr. Pinto also "successfully completed weekly substance abuse and mental health treatment and continues to submit to random drug testing. To date, all drug tests have been returned negative and the defendant has complied with all conditions of release." Doc. 45.

3. Throughout the pendency of the case, Mr. Pinto has maintained a full-time job. He first worked at Riccobene, a masonry company in Albuquerque. During a meeting with Defense Counsel, he received a phone call from that employer, informing him that the company had to downsize, and he would be let go. Nonetheless, he promptly found another job at Sam's Club where he now works.

4. During the pendency of this case, Mr. Pinto has sent his earnings home to his family in Dulce, New Mexico, save for the amount he is required to pay La Pasada for his residence there. At home in Dulce, Mr. Pinto's wife, Shandice Pinto, cares for their three children as well as two of their nieces and a nephew. The oldest child is in 10th grade, and the youngest is in elementary school. Ms. Pinto does not currently work. She has struggled to find a job that does not interfere with her responsibilities as a single mother.

5. Mr. Pinto's income has been essential for the family - before he was charged and during the time he has been on conditions of release. Ms. Pinto reports to Defense Counsel that during his employment at Sam's Club, Mr. Pinto has been sending $600-$800 to the family every two weeks. Since Ms. Pinto has struggled to find suitable employment, the only other income the family receives is oil and gas royalties. Ms. Pinto explained that the income from those royalties helps to cover bills, but Mr. Pinto's income covers remaining bills as well as other costs, including food, clothing, expenses related to the children's school and field trips, transportation, gas, laundry (the family's dryer is broken, so they have had to go to a Laundromat), etc.

6. Even with Mr. Pinto's income, the family just manages to scrape by. They do receive food stamps. Without Mr. Pinto's income, the family will be financially devastated. Mr. Pinto is deeply concerned about this.

7. Ms. Pinto recently had a job at Family Dollar for a matter of months. She was forced to leave that job because she kept being scheduled to work when she had to care for her children. However, she understands that Mr. Pinto is entering a plea agreement with the government that will require him to serve a lengthy sentence in prison. She is committed to finding a way to survive when he does go into custody, through finding more suitable employment for herself and otherwise, but it would be helpful to her to have a short period when Mr. Pinto can continue to send his earnings to the family before he is sentenced.

8. Even though the period when Mr. Pinto would be permitted to work would be only a few months, that period would be invaluable to Mr. Pinto and his family. It would give his family time to adjust to the lost income and to take steps toward creating a sustainable financial situation. It would allow Mr. Pinto to accept responsibility and try to leave his family in a more financially viable position before he serves his sentence.

9. Mr. Pinto respectfully requests the Court continue his release pending sentencing on the same strict conditions he has observed throughout this case.

## LEGAL ARGUMENT

The Bail Reform Act provides that pending sentencing, the presumption is that a defendant will be detained, "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). A defendant must rebut the presumption of detention with clear and convincing evidence that he is not a flight risk or a danger to any person or the community. *See* 18 U.S.C. § 3143(a)(1) (imposing a "clear and convincing evidence" standard); Fed. R. Crim. P. 46(c) ("the burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."); *see also United States v. Johnson*, 652 Fed. Appx. 619 (10th Cir. 2016)(unpublished)(citing the same).

If, however, the offense of guilt is an offense with a maximum sentence life imprisonment, the mandatory detention provisions of Section 3143(b)(2) apply. *See* 18 U.S.C. §§ 3143(a)(2). Even if the mandatory detention provisions apply, the judicial officer may nonetheless "consider whether exceptional reasons exist to release a defendant under § 3145(c)." *United States v. Jones*, 979 F.2d 804 (10th Cir. 1992); *United States v. Dahda*, 772 Fed. Appx. 730 (10th Cir. 2019) (unpublished). The "exceptional reasons" sentence was added to 3145(c) when Congress added the mandatory provisions of §§ 3143(a)(2) and (b)(2):

> a person subject to detention pursuant to section 3143(a)(2) 'who meets the conditions of release set forth in sections 3143(a)(1) or (b)(2), may be ordered released under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.'

18 U.S.C. § 3145(c); *United States v. Carr*, 957 F.2d 1239, 1240 (5th Cir. 1991). The addition of the "exceptional reasons" provision "was apparently designed to provide an avenue for exceptional discretionary relief from those provisions." *Carr*, 957 F.2d at 1240. To obtain release under § 3145(c), "a defendant must both meet the conditions set forth in § 3145(a)(1) and make 'a clear showing of exceptional reasons why [] detention would not be appropriate.'" *Dahda*, 772 Fed. Appx. 730 (10th Cir. 2019)(unpublished)(*citing United States v. Kinslow*, 105 F.3d 555, 557 (10th Cir. 1997)(per curiam)).

Mr. Pinto is not a flight risk, and he does not pose a danger to the safety of any other person or the community if he were permitted to remain released on the same conditions as his pretrial release pending sentencing. Moreover, exceptional

reasons exist that demonstrate that detention pending sentencing would not be appropriate.

    A.    <u>As evidenced through his pretrial conduct, Mr. Pinto is not a flight risk, and his ties to the community are very strong.</u>

Mr. Pinto, who is a lifelong New Mexico resident, did not flee the district of New Mexico during the almost fifteen months of his release on pretrial conditions, having been notified of the federal charges and maximum possible penalties. His movements have been tracked through GPS monitoring, and he has always complied with the significant restrictions on his freedom. His conditions of release could not have been stricter; he had no violations or problems complying with those conditions.

Further, Mr. Pinto understands that he will receive a benefit from entering into the plea agreement which requires him to provide truthful, accurate and complete information to the United States Pretrial Services and Probation Office. This will require a presentence investigation report interview as well as continued contact and reporting to the Pretrial Services Office. If he were to fail to comply with his obligations with respect to the United States Pretrial Services and Probation Office, the United States could declare the plea agreement null and void and he would lose the benefits conferred by the plea agreement. Additionally, Mr. Pinto understands that the plea agreement gives the sentencing judge discretion to sentence him within a broad range of possible incarceration time, and his continued compliance with conditions of release would only benefit him should this court allow him to remain out of custody and working while on conditions of release.

      B.     <u>As evidenced through his pre-trial conduct, Mr. Pinto does not pose a danger to the safety of any other person or the community.</u>

Although he is pleading guilty to a serious offense, there is no evidence that Mr. Pinto now presents a threat to the community or another person. He has little criminal history prior to this case, and it is not violent. While on conditions of release, he has not violated the law. He has not been permitted to leave Bernalillo County or even to leave the Halfway House without permission, and he has followed those rules without issue. He has been prohibited from contacting Jane Doe, who resides a significant distance from Albuquerque, and he has not made contact with her. There is simply no reason to believe he presents a threat to community safety at this time.

Mr. Pinto also understands that if he were to violate any federal, state, county, municipal or tribal law, or place anyone in danger, or fail to comply with his obligations with respect to the United States Pretrial Services and Probation Office, the United Sates could declare the plea agreement null and void and he would lose the benefits it confers.

      C.     <u>There are exceptional reasons why Mr. Pinto's detention would not be appropriate</u>.

There are exceptional reasons to permit Mr. Pinto's continued release pending sentencing. While the term "exceptional reasons" receives little explanation in the statute, the Tenth Circuit has constructed its own loose parameters:

> "Exceptional" is defined as "being out of the ordinary: uncommon, rare." *Webster's Third New Int'l Dictionary* (*Unabridged*) 791 (G. & C. Merriam Co. 1976). Courts have agreed that "a case by case evaluation is essential." *United States v. DiSomma,* 951 F.2d 494, 497 (2d Cir. 1991) (referring to "a

7

unique combination of circumstances giving rise to situations that are out of the ordinary"); *see also United States v. Koon,* 6 F.3d 561, 564 (9th Cir.1993) (Rymer, J., concurring); *United States v. Herrera–Soto,* 961 F.2d 645, 647 (7th Cir.1992).

*United States v. Wages*, 271 F. App'x 726, 727 (10th Cir. 2008). "The Tenth Circuit has stated that 'a unique combination of circumstances giving rise to situations that are out of the ordinary' must exist." *Lopez*, 184 F. Supp. at 1144 (quoting *Wages*, 271 F. App'x. at 727). "Courts also generally agree that 'a case by case evaluation is essential' and that the district court has 'broad discretion… to consider all the particular circumstances of the case before it.'" *Id.* (quoting *Wages*, 271 F. App'x at 727 and *United States v. Garcia*, 340 F.3d 1013, 1016-17 (9th Cir. 2003)). "Accordingly, the 'Tenth Circuit … refrains from placing contours around the outer limits of the circumstances that may constitute 'exceptional reasons,' while finding that particular circumstances fail to meet that exception.'" *Id.* (quoting *United States v. Westover*, 2003 WL 22953091, at *1 (D. Kan. Nov. 13, 2003)).

As an example, the Tenth Circuit has affirmed a district court's finding of exceptional circumstances where: (1) the defendant was not a flight risk or danger to any person or the community, (2) a three-year span of dual prosecution with federal and tribal courts which was unusual and uncommon, (3) the defendant had lived in the same community as the victim without incident, and (4) the defendant had been under constant supervision and compliant with federal and tribal supervision. *See United States Mutte,* 383 F. App'x 716, 717 (10th Cir. 2010) (unpublished). The Court reasoned, "'[A] wide range of factors may bear upon the analysis.' The district court has 'broad discretion… to consider all the particular

8

circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct.'" *Id.* at 718, (citing *United States v. Garcia,* 340 F. 3d 1013, 1018 (9th Cir. 2003)). Other courts granting release based on exceptional reasons have similarly relied on "a combination of personal factors (e.g., employment, ties to the community, performance on pre-trial release, medical conditions, and legal factors [.]" *United States v. Kaquatosh,* 252 F. Supp. 2d 775, 778 (E.D. Wis. 2003).

It is unusual and exceptional for a defendant to be the primary income-earner for a household of seven people right up to the point of entering a guilty plea to a serious crime. It is not typically the case that a defendant's incarceration threatens to thrust his family into poverty. But that is the situation here.

Nor is it common that a defendant in Mr. Pinto's position during the pendency of the case, facing charges with such serious possible penalties, would continue to work full-time and send all his available income to support the family he is prohibited from residing with.

Of course, Mr. Pinto's family will have to make great efforts to adjust to the loss of his income once he is sentenced to a term of incarceration. But allowing him to continue to provide for them for several more months before he is sentenced would make all the difference in the world to a struggling family. That time would allow Ms. Pinto a better opportunity to reorganize expenses, look for a suitable job for herself and explore any benefits the family may qualify for going forward.

Mr. Pinto's exceptional performance on strict conditions of release and

9

corresponding demonstration that he is not a flight risk or threat to community safety combined with his employment and the crucial financial support he will be able to continue to provide for his family are exceptional reasons why his detention would not be appropriate.

Despite Assistant United States Attorney Meg Tomlinson's opposition to this motion for continued release and pretrial services' recommendation that Mr. Pinto should be remanded into custody because of the charge of conviction, the court has broad discretion "to consider all the particular circumstances" that give rise to exceptional circumstances in this case.

Therefore, Mr. Pinto respectfully requests the Court recognize these exceptional circumstances and allow him to remain on strict conditions of release pending sentencing in this case.

    Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
hadley_brown@fd.org

  /s/ *filed electronically on 5/28/25*
Hadley Brown
Assistant Federal Public Defender
Attorney for Cisco Pinto